## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JASON HEMENWAY and
EVA HEMENWAY,

      Plaintiffs,

v.                            CASE NO:  8:11-CV-597-T-30AEP

JOHN BARTOLETTA,
HIGH STREET CAPITAL MANAGEMENT, LLC,
HIGH STREET GROUP, LLC,
HIGH STREET FINANCIAL, LLC, and
ERICK J. ARNETT,

      Defendants.

_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon the Defendants' Motion to Dismiss (Dkt. 17) Plaintiffs' Amended Complaint.  The Court, having reviewed the motion, response (Dkt. 22), and being otherwise advised in the premises, concludes that Defendants' Motion to Dismiss should be denied.

## BACKGROUND

In 2007, Plaintiff Jason Hemenway won the Florida Lottery and took a lump sum payment of $13,779,762. Although the Hemenways lacked familiarity with securities and investment matters, they opened an investment account at Capital City Bank Trust Company ("Capital City Bank"). The Hemenways indicated on a Capital City Bank Asset Allocation Questionnaire that they preferred conservative investments that had minimal chances of loss,

desired long-term growth of investments but were also concerned about temporary decline, and also believed that the safety of the investment principal was most important to them.

Defendant Erick Arnett was the Hemenways' primary representative at Capital City Bank. Arnett knew about the Hemenways' investment objectives and preferences. Consistent with those objectives, the Hemenways' investments at Capital City Bank were conservative and low risk.

Defendant John Bartoletta managed, controlled, and primarily owned Defendants High Street Group, LLC ("High Street Group"), High Street Capital Management, LLC ("High Street Capital"), and High Street Financial, LLC ("High Street Financial"). Arnett eventually joined Bartoletta at High Street Group.

Both Arnett and Bartoletta met with the Hemenways to discuss transferring the Hemenways' investments at Capital City Bank to High Street Group. Additionally, Arnett and Bartoletta encouraged the Hemenways to invest in New Advantage Futures, L.P. ("New Advantage"), a limited partnership that would act as a "hedge fund." High Street Capital was New Advantage's General Partner and it solely managed the limited partnership. High Street Group was High Street Capital's Managing Member. High Street Capital in turn hired High Street Financial as New Advantage's management company, with responsibility for the limited partnership's investment decisions and certain administrative services.

Over dinner, Arnett and Bartoletta told the Hemenways that the proposed investment was (1) safe and low risk; (2) there would be at least eight to ten other high net worth individuals investing with the Hemenways; (3) the Hemenways could retrieve their money at any time; and (4) the investment was consistent with the Hemenways's investment objectives and risk tolerances.

Acting on the advice and representations of Arnett and Bartoletta, the Hemenways withdrew some funds from Capital City Bank and purchased two limited partner interests in New Advantage; Jason Hemenway purchased a $1,500,000 interest and Eva Hemenway purchased a $1,000,000 interest. The Hemenways were the only limited partners in New Advantage.

The Hemenways claim that Arnett, Bartoletta, and all other Defendants never told them that (1) the limited partnership would trade in highly speculative and volatile investments; (2) the limited partnership interests were highly sophisticated investments that were inappropriate for inexperienced and untrained individuals; (3) the limited partnership interests carried a higher risk compared to bonds and traditional equities; (4) the limited partnership interests were inappropriate investments for the Hemenways; and (5) the limited partnership interests were inconsistent with the Hemenways' investment objectives and risk tolerance.

In 2009, the Hemenways lost 10.82 percent of their investment in New Advantage. Defendants assured the Hemenways that the loss in value was unusual and temporary. Defendants also repeatedly encouraged the Hemenways to remain in New Advantage. All

the while, the Hemenways' partnership interests continued to decline: from April 1 to June 30, 2010, the Hemenways lost about $589,072.

Defendants recommended the Hemenways delay withdrawing from New Advantage until June 30, 2010, at the earliest. The Hemenways waited until that date, and then withdrew from the limited partnership. The Hemenways lost approximately $1,200,000 over fourteen months.

On March 22, 2011, the Hemenways filed their complaint against Defendants Bartoletta, High Street Capital, High Street Group, and High Street Financial. The Hemenways amended their complaint on September 16, 2011 to add Arnett as a defendant. The Hemenways attached several documents to their amended complaint, notably two sets of a "Subscription Agreement" and a "Limited Partnership Agreement" of New Advantage. Bill Hemenway signed one set and Eva Hemenway signed the other.

The Hemenways assert six causes of action in their amended complaint:

(1)     Count one for a violation of both §10(b) of the Securities and Exchange Act of 1934, 48 Stat. 891, as amended, 15 U.S.C. § 78j(b), and Securities and Exchange Commission (SEC) Rule 10b–5, 17 C.F.R. § 240.10b–5 (2011),

(2)     Count two for a violation of Florida Statute § 517.301,

(3)     Count three for breach of a fiduciary duty,

(4)     Count four for fraud,

(5)     Count five for negligence, and

(6)     Count six for aiding and abetting a breach of a fiduciary duty.

Defendants move to dismiss the Hemenways' Count One for failure to state a cause of action, and move to dismiss the Hemenways' remaining clams for lack of subject matter jurisdiction. Defendants assert that the Hemenways' claim of § 10(b) and Rule 10b–5 misrepresentations and omissions are directly contradicted by the documents that Defendants gave the Hemenways before the Hemenways entered into New Advantage, which were: a Confidential Private Offering Memorandum ("Confidential Memorandum"), the Subscription Agreement, and the Limited Partnership Agreement. Defendants rely on those documents, primarily the Confidential Memorandum attached to their motion to dismiss, to refute the Hemenways' allegation of § 10(b) and Rule 10b–5 misrepresentations and omissions.

The Hemenways assert they never received a "Confidential Private Offering Memorandum" and ask the Court to ignore Defendants' attached document by that name in resolving this motion. The Hemenways concede the Subscription Agreement and the Limited Partnership Agreement may contradict some of their misrepresentations and omissions. However, the Hemenways assert that the amended complaint states a claim under § 10(b) and Rule 10b–5 notwithstanding the Court's consideration of those documents. Alternatively, the Hemenways request leave to file a second amended complaint if the Court dismisses the amended complaint.

## DISCUSSION

### *Legal Standards*

Section 10(b) of the Exchange Act provides:

> It shall be unlawful for any person, directly or indirectly, . . . [t]o use or
> employ, in connection with the purchase or sale of any security . . . any
> manipulative or deceptive device or contrivance in contravention of such
> rules and regulations as the Commission may prescribe as necessary or
> appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (2011).

Rule 10b–5, promulgated by the SEC pursuant to § 10(b), provides in relevant part:

> It shall be unlawful for any person, directly or indirectly, . . . [t]o make any
> untrue statement of material fact or to omit to state a material fact necessary
> in order to make the statements made, in the light of the circumstances under
> which they were made, not misleading . . . .

17 C.F.R. § 240.10b–5(b) (2011).

To state a § 10(b) and Rule 10b–5 claim, a plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir. 2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

To survive a motion to dismiss, a claim brought under § 10(b) and Rule 10b–5 must satisfy (1) the federal notice pleading requirements; (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b); and (3) the additional pleading

requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

*FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)). However, courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## *Analysis*

### A.    **Consideration of the Attachments**

In ruling on a motion to dismiss, the Court may consider not only the complaint but also the exhibits attached to it. *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.") (quotation marks omitted); Fed.R.Civ.P. 10(c) ("A

---

[1] Pub. L. No. 104–67, 109 Stat. 737 (codified as amended in scattered sections of 15 U.S.C.).

copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Accordingly, the Court can consider the Subscription Agreements and the Limited Partnership Agreements attached to the amended complaint.

Under the "incorporation by reference" doctrine, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is (1) central to the plaintiff's claim; and (2) . . . the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"). Here, the Hemenways dispute the authenticity of Defendants' attached Confidential Memorandum. *See* Plaintiffs' Response (Dkt. 22) at ¶ 7.

Defendants attached an affidavit to their motion to dismiss in which Bartoletta states that Defendants' "Tampa Internal Copy" of the Confidential Memorandum is an exact copy of the Confidential Memorandum that was given to the Hemenways. However, the Court cannot consider Defendants' attached affidavit in deciding this motion to dismiss without modifying the motion into one of summary judgment. The affidavit is outside of the pleadings and no exception applies to avoid Federal Rule of Civil Procedure 12(d).[2]

---

[2] Rule 12(d) states that:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside of the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.

Accordingly, the Court will not consider Defendants' attached Confidential Memorandum and accompanying affidavit in deciding this motion to dismiss.

**B.     The Sufficiency of the Hemenways' Amended Complaint**

Defendants do not expressly state which element or elements are defective in the Hemenways' amended complaint. Based on the cases that Defendants cite in their motion to dismiss, it appears Defendants are asserting that the Hemenways failed to allege justifiable reliance on all of the alleged material misrepresentations and omissions.

Defendants cite *Feinman v. Schulman Berlin & Davis*, 677 F.Supp. 168 (S.D.N.Y. 1988), in which the plaintiffs brought an action for securities fraud against their investment advisors. The court in *Feinman* granted the investment advisors' motion to dismiss because the plaintiffs failed to allege justifiable reliance since the offering memorandum that was provided to the plaintiffs directly contradicted each alleged misrepresentation and omission. *Feinman*, 677 F.Supp. at 170. Defendants also cite *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798 (1st Cir. 1987) for the proposition that reliance on statements that the clear language of the offering memorandum directly contradicted cannot be a basis for a federal securities fraud claim. Thus, Defendants appear to find fault with the Hemenways' allegations of justifiable reliance on the material misrepresentations and omissions.

As already stated, the Court can consider the Subscription Agreements and Limited Partnership Agreements attached to the Hemenways' amended complaint. Defendants also rely on those two sets of agreements to directly contradict the Hemenways' §10(b) and Rule 10b–5 claim of fraudulent misrepresentations and omissions.

### 1.      The Oral Misrepresentations

The Court will first consider whether a written statement in the Subscription Agreement and the Limited Partnership Agreement that contradicts Defendants' preceding oral statement would bar the Hemenways' §10(b) and Rule 10b–5 claim of fraudulent misrepresentations. In this circuit, the usual presumption is that a plaintiff cannot justifiably rely on an oral representation that a written representation conflicts. *See First Union Discount Brokerage Services, Inc. v. Milos*, 997 F.2d 835, 846 & n.22 (11th Cir. 1993) (noting the usual presumption that reliance on an oral representation that a written representation contradicts is not justified). However, the court noted that in *Bruschi v. Brown*, 876 F.2d 1526 (11th Cir. 1989), "we explained that circumstances may warrant departure from the usual presumption." *First Union*, 997 F.2d at 846 n.22.

> [In *Bruschi*], the document was an offering memorandum; here, two written contracts. There, the investor was 'unsophisticated and inexperienced in financial matters,' here, Mr. Milos is a sophisticated investor. There, the defendant advised the investor not to read the disclosure documents, here, First Union did no such thing. There, the defendant initiated the security purchase, here, the Miloses had full control over their investments. There, some statements in the disclosure 'documents confirmed some of the alleged oral misrepresentations,' here, the written agreements violently contradict the oral representation.

*Id.* (internal citations omitted).

Here, the documents Defendants rely on to refute the Hemenways' federal securities claim are offering memoranda for a security, the Hemenways are unsophisticated and

inexperienced in financial matters, and Defendants initiated the security purchase.[3]

Accordingly, the circumstances of this case warrant application of *Bruschi*'s multi-factor

analysis to determine justifiable reliance:

> Determinations of whether an investor's reliance was justified requires the consideration of all relevant factors, including (1) the sophistication and expertise of the plaintiff in financial and security matters; (2) the existence of long standing business or personal relationships between the plaintiff and defendant; (3) the plaintiff's access to relevant information; (4) the existence of a fiduciary relationship owed by the defendant to the plaintiff; (5) concealment of fraud by the defendant; (6) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations. No single factor is dispositive; all must be considered and balanced in determining whether reliance was justified.

*Bruschi*, 876 F.2d at 1529 (citations omitted).

The *Bruschi* court rejected the defendant's argument that the plaintiff could not, as a matter of law, justifiably rely on the defendant's oral misrepresentations because the defendant subsequently provided written disclosures to the plaintiff. *Id.* The court therefore concluded that it could not determine, on a motion for summary judgment, whether the plaintiff's reliance was reasonable. *Id.* at 1530. Here, the Court concludes that the circumstances of Defendants' alleged misrepresentations and subsequent written disclosures cannot be fully evaluated on a motion to dismiss.

---

[3] The parties do not dispute that an interest in a limited partnership in which the general partner solely manages the partnership is a "security" under §10(b) and Rule 10b–5. *See, e.g., Mayer v. Oil Field Systems Corp.*, 721 F.2d 59, 65 (2d Cir. 1983); *SEC v. Holschuh*, 694 F.2d 130, 137 (7th Cir. 1982); *SEC v. Murphy*, 626 F.2d 633, 640 (9th Cir. 1980).

Defendants cite *Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp.2d 1283 (S.D.Fla. 2007) to argue that no action will lie for securities fraud where the documents provided to the investors contradict the alleged misrepresentations. In *Garcia*, the court granted summary judgment in favor of the defendants on the plaintiffs' §10(b) and Rule 10b–5 claim based on several grounds, such as (1) the purchase contracts for condominiums at issue were not "investment contracts" for purposes of the federal securities laws, and (2) the plaintiffs could not reasonably have relied on any of the alleged oral misrepresentations because "[r]eliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Id.* at 1292–95.

Here, the Court is deciding a motion to dismiss, rather than one of summary judgment. Further, the transactions at issue are without dispute "investment contracts" under the federal securities laws, and the Hemenways alleged additional facts that warrant a departure from the usual presumption of reliance on misrepresentations contradicted by a written agreement that applied to the plaintiffs in *Garcia*. Rather, the Court must consider and balance the factors stated in *Bruschi* to determine whether the Hemenways justifiably relied on Defendants' misrepresentations.

Defendants also cite to cases in other circuits to establish, as a matter of law, that the Hemenways cannot state a claim for federal securities fraud when the documents provided to them directly contradict their allegations of misrepresentations. The Court is aware that other circuits permit Defendants to raise that defense on a motion to dismiss. *See, e.g., Carr*

*v. CIGNA Securities, Inc.*, 95 F.3d 544, 547 (7th Cir. 1996). In *Carr*, the court stated:

> The claims are barred by a very simple, very basic, very sensible principle
> of the law of fraud, both the law of securities fraud and the common law of
> fraud. If a literate, competent adult is given a document that in readable and
> comprehensible prose says X (X might be, "this is a risky investment"), and
> the person who hands it to him tells him, orally, not-X ("this is a safe
> investment"), our literate, competent adult cannot maintain an action for
> fraud against the issuer of the document.).

*Id.*

However, the court in *Carr* also acknowledged that the Eleventh Circuit does not

follow the above proposition. *See id.* (citing *Bruschi* in contradiction to Seventh and Tenth

Circuit precedents). This Court is bound by the precedents of this Circuit. Thus in accordance

with *Bruschi*, Defendants cannot rely on the proffered documents, such as the Subscription

Agreements and the Limited Partnership Agreements, to dismiss the Hemenways' §10(b) and

Rule 10b–5 claim on the basis that the documents directly contradict Defendants' preceding

oral statements.

Defendants next point to the non-reliance clauses, such as the one in the Subscription

Agreements, to show that the Hemenways could not justifiably rely on previous oral

statements. "While courts, in some instances, have held that the inclusion of a 'no other

representations' or integration clause bars a claim as a matter of law, the circumstances of

this case caution against a determination, at this stage of the litigation, that the language of

the [Subscription Agreement] precludes [the Hemenways] from relying on the Defendants'

statements." *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 2012

WL 204290 at \*11 (S.D.Fla. Jan. 24, 2012) (Huck, J.). *Bruschi* states that this Circuit has "never held that, regardless of the circumstances, an investor is always precluded from recovering under Rule 10b–5 if the misrepresentations upon which the investor relied were oral and conflict in some way with contemporaneous written representations available to the investor." *Bruschi*, 876 F.2d at 1529. Thus, the law of this Circuit provides for a holistic analysis of many factors, all of which "must be considered and balanced" to determine whether reliance was justified under the circumstances of this case. *Id.*

Moreover, the Subscription Agreements are agreements between Jason and Eva Hemenway, as the "New Limited Partner[s]," and High Street Capital, as the "General Partner." The other defendants aside from High Street Capital are not named parties to the contract, and therefore, they generally cannot receive the benefit of the Subscription Agreement's non reliance clause. *See Galstaldi v. Sunvest Communities USA, LLC*, 637 F.Supp.2d 1045, 1055 (S.D.Fla. 2009) ("As the Eleventh Circuit has noted, there is a general rule that a non-party to a contract may not invoke the contract") (citing *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 973 (11th Cir. 2002)).

Accordingly, Defendants cannot rely on a non-reliance clause, such as the one in the Subscription Agreements, to dismiss the Hemenways' §10(b) and Rule 10b–5 claim.

## 2.     The Omissions

At least one district court in the Eleventh Circuit has determined that the existence of written statements in securities offering documents containing omitted information is not an absolute defense to a §10(b) and Rule 10b–5 claim of fraudulent omission. *See Medine v.*

*Washington Mut., FA*, 185 F.R.D. 366, 371 (S.D.Fla. 1998) (citing *Bruschi*, 876 F.2d at 1529). Although the *Bruschi* court focused on oral misrepresentations, the Court concludes that *Bruschi*'s reasoning is applicable to claims of omissions that are alleged in concert with oral misrepresentations.

Thus, even if the Defendants could show that the proffered documents provided to the Hemenways actually stated what the Hemenways claim Defendants omitted from them, which implicates the third *Bruschi* factor for justifiable reliance, the Court can only consider that in combination with the other factors to determine whether reliance was justified. The Court cannot evaluate all of the factors while deciding a motion to dismiss.

**C.      The Hemenways' State Law Claims**

Defendants have not succeeded in dismissing the Hemenways' §10(b) and Rule 10b–5 claim. Accordingly, the Court will continue to exercise supplemental jurisdiction over the Hemenways' state law claims. Without sufficient argument from the Defendants on this point, the Court is not in a position to grant Defendants' motion to dismiss these claims.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 17) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on April 13, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies Furnished To**</u>:
Counsel/Parties of Record

*S:\Odd\2011\11-cv-597.hemenway mtd 17.wpd*